IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

| | |
|---|---|
| WILLIAM WHITFIELD HYMAN and NATALIE HYMAN,<br><br>    Plaintiffs,<br><br>  v.<br><br>CITY OF WALNUT RIDGE,<br><br>    Defendant. | Case No. 3:18-CV-230-DPM |

**AMENDED CIVIL RIGHTS COMPLAINT AND REQUEST FOR JURY TRIAL**

  COMES NOW the Plaintiffs, WILLIAM WHITFIELD HYMAN and NATALIE HYMAN, by and through their attorney of record, Kesha M. Chiappinelli of The Zaffino Law Firm, LLC, and for their Complaint against the City of Walnut Ridge, would state and allege the following:

**INTRODUCTION**

  1. Social media platforms enable ordinary citizens to speak directly to public officials about government in much the same way they could as if attending a town hall meeting. Platforms like Facebook operate as "the modern public square" and provide "perhaps the most powerful mechanisms available to a private citizen to make his or her voice heard." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1737 (2017). The First Amendment of the United States Constitution and Article II, Section VI of the Arkansas Constitution protect private citizens'

1

comments posted and shared through Facebook from viewpoint-based censorship by the Government.

2. Prior to April 23, 2018, the Walnut Ridge Police Department maintained a Facebook page to notify the public about criminal activity in the area, upcoming events, and other items of interest to the Walnut Ridge community.

3. The Police Department also allowed the public to post comments about Police Department activity and created a public forum on its Facebook page, subject to one blatantly unconstitutional condition: no comment could criticize the Police Department in a way the Department deemed unacceptable.

4. Pursuant to a written comment policy administered by the Police Department and attributable to Defendant City of Walnut Ridge, the Police Department deleted "as soon as feasible"—and thereby remove from public view—any "objectionable entry," including anything the Police Department felt "might harm the public welfare." The Police Department implemented this exclusion by erasing comments it perceived as too negative.

5. Plaintiffs William Whitfield Hyman and Natalie Hyman are among the many people whose speech the Police Department censored under this this broad and subjective policy. In April 2018, Plaintiffs posted comments on the Police Department's Facebook page that criticized former Police Chief Chris Kirksey's and Mayor Charles Snapp's handling of an instance of officer misconduct. The underlying controversy garnered national attention, led to Chief Kirksey being temporarily placed on administrative leave, and is widely understood to have led to his eventual resignation.

6. The Police Department—acting pursuant to its written policy—systematically deleted Plaintiffs' comments and the comments of dozens of other concerned citizens who criticized the Department and mayor for their actions.

7. The Police Department's conduct was classic viewpoint discrimination taken to suppress dissent and paint a falsely positive picture of the Police Department. This is the very essence of what the First Amendment of the United States Constitution and Article II, Section 6 the Arkansas Constitution prohibit. Plaintiffs now seek through this lawsuit to vindicate their free speech rights.

## PARTIES

8. Plaintiff William Whitfield Hyman is an adult citizen and resident of Fort Smith, Sebastian County, Arkansas.

9. Plaintiff Natalie Hyman is an adult citizen and resident of Fort Smith, Sebastian County, Arkansas.

10. Defendant City of Walnut Ridge (the "City") is a municipality in the State of Arkansas and has a population exceeding 2,500 inhabitants. The Walnut Ridge Police Department is a department of the City. The Police Department is run under the direction of a police chief, who acts under the supervision of the mayor. At all times relevant to this complaint, Mayor Charles Snapp was the final City policymaker for Police Department policies not expressly dictated by local ordinance, including the Facebook comment policy that permits the suppression of speech critical of the City.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367. Venue is proper in this district under 28 U.S.C. § 1391.

# FACTS

## I. The Walnut Ridge Police Department

12. The Walnut Ridge Police Department is a department within the City of Walnut Ridge.

13. Under state law, the Police Department exists under the "general superintendence" of Mayor Snapp, who is responsible for the day-to-day operations of the Police Department. The police chief and police officers in the Police Department serve under Mayor Snapp.

14. Law enforcement is a key component of the Mayor's job. In 2017, the City spent $1,059,215 on law enforcement and public safety operations, representing more than 50 percent of all City expenditures that year.

15. Mayor Snapp has been actively involved in the Police Department's work. He oversees personnel decisions and helps formulate Department policies. For instance, Mayor Snapp personally made the decision to hire Chief Kirksey in 2015. That same year, he created a drug interdiction department within the Police Department and appointed an officer to head it. And in 2017, when advocating for the City of Walnut Ridge to consolidate with the City of Hoxie, Mayor Snapp oversaw the police chief's creation of a report that would facilitate the proposed consolidation. These are just some examples of Mayor Snapp's involvement in Police Department activities and control over Police Department policies.

## II. The Police Department's Facebook Page and Comment Policy

16. Facebook is the world's most popular social media platform. It is used by billions of people worldwide, including nearly 70 percent of U.S. adults. Facebook allows its users to

create publicly accessible pages to represent, *inter alia*, governments and their agencies. Anyone connected to the Internet may access a Facebook page, and any Facebook user, unless banned, may publish posts on a publicly accessible Facebook page and comment on the page's posts.

17. Social media platforms like Facebook are an important and effective way for governmental agencies to communicate vital information to, receive feedback from, and encourage debate among the public. Indeed, state and local agencies responsible for public safety are increasingly turning to social media to communicate with the public during natural disasters and other emergencies.

18. At some point before 2015, the Walnut Ridge Police Department created a publicly accessible Facebook page.

19. The Police Department used its Facebook page to inform the public about its work and to encourage public discussion of the Police Department's activity. For example, in December 2017, the Police Department authored a post informing the public of two property damage and trespass incidents and asked the public to "Please Share Post." In February 2018, the Police Department used Facebook as a platform to communicate to the public about its recent decision to sign a letter supporting the Byrne Justice Assistance Grant program, a federal program that provides funding for local law enforcement agencies.

20. Over 3,400 people—a number greater than half of Walnut Ridge's entire population—chose to "follow" the Police Department's Facebook page, meaning that they elected to receive notifications when the Police Department posted information.

21. After initially not allowing members of the public to comment on its Facebook page, the Police Department decided to open up the page to public comment. At that time, the

Police Department created a policy to govern how it would handle comments from members of the public on its Facebook page. A copy of that policy is attached as Exhibit A.

22. Mayor Snapp oversaw the formulation and implementation of the Police Department's Facebook policies. For example, in November 2017, he emailed Chief Kirksey about parameters for posting on the Police Department's Facebook page and ordered that he be kept up to date on comments about that aspect of the policy, "both good and bad," noting that the City was "in the early development stages of social media."

23. The comment policy was posted publicly, and Mayor Snapp authorized its continued use.

24. The policy explains that the decision to allow members of the public to post comments was designed to "facilitate the exchange of information with the public at large." The policy "encourage[d] and welcome[d] postings and comments from the general public about issues related to law enforcement in the Walnut Ridge area."

25. The policy also made clear, however, that the Police Department would not tolerate "any objectionable entry." To that end, the policy declared that the Police Department "will remove as soon as feasible any posting that involves," among other criteria, any posting "that, by its nature or content, might harm public welfare."

26. This meant, as Chief Kirksey at one point explained in a public post, that the Police Department would not allow "negative comments."

### III. The Finley Controversy

27. The suppression of Plaintiffs' speech arises out of the Police Department's controversial treatment of Adam Finley, an individual who worked at a railroad in Walnut Ridge.

28. On December 28, 2016, Finley was pulled over while driving near the railroad by a Walnut Ridge police officer. Although Finley had not engaged in any traffic violations and provided identification demonstrating that he was not trespassing, the officer continued the stop, and it eventually turned physical. As described by the Washington Post, body camera footage created by the officer depicted the following events: "[The officer] grabs Finley and throws him against the truck. Finley puts his hands behind his back. [The officer] cuffs him and says, 'You're about ignorant. ' He then again shoves Finley into the truck, this time with enough force to dislodge his own body camera, which falls to the ground. Over the course of the next several minutes, [the officer] repeatedly uses profanity, lectures to Finley as if he were a child and claims that Finley is 'hostile and aggressive.' Throughout all of this, Finley is remarkably calm . . . ." The incident ended without arrest, and the officer released Finley.

29. On the day of the incident, Mayor Snapp and Chief Kirksey reviewed the body camera footage. They reprimanded the officer only for using the F-word and not for any other conduct. Also that same day, Mayor Snapp directed Chief Kirksey to instruct all officers that the F-word was "not acceptable and from the first day of January will not be acceptable language." A disciplinary complaint created in connection with the incident noted that a "policy was put in place on January 01, 2017, not to use" the F-word.

30. Finley later went to the Police Department to file a complaint. According to reports, he was instead questioned and issued two citations arising out of the initial incident: one for "refusal to submit" and one for "obstructing governmental operations." Prosecutors pursued the charges against Finley in an April 2017 bench trial. Finley was acquitted.

**IV.    The Censorship of Plaintiffs' Speech**

31. In April 2018, a year after his criminal trial, Finley brought a civil rights complaint. At that point, as the incident was disclosed to the public, journalists obtained and released the body camera footage and other details related to the Police Department's treatment of Finley.

32. Public outcry over the Police Department's treatment of Finley followed soon after.

33. Mayor Snapp was heavily involved in managing the fallout.

34. On April 18, 2018, he emailed the Lawrence County Sheriff after his staff received a "high volume of calls related to the December 2016 traffic stop" to ask where his staff could report "concerns" about the calls.

35. Mayor Snapp also assisted in responding to press inquiries.

36. In addition to phone calls from concerned citizens and questions from the press, numerous other individuals, including Plaintiffs, made their views known by posting comments on the Police Department's Facebook page.

37. At 9:20 am on April 18, 2018—the same day Mayor Snapp contacted the Sheriff about receiving critical phone calls—Plaintiff Whitfield Hyman posted a comment and a video of the body camera footage to the general timeline of the Walnut Ridge Police Department's Facebook page. Mr. Hyman's comment was the first post in its thread and was not made in response to any other comment.

38. Mr. Hyman's comment read in full: "Could you please arrest this officer for assault, battery, false imprisonment, and kidnapping?" The video Mr. Hyman shared had earlier been posted on another person's Facebook page, so the original poster's commentary could be

seen on Mr. Hyman's post. That commentary read, "Walnut Ridge cop harassing this guy on the job."

39. The Police Department, acting pursuant to its comment policy, deleted Mr. Hyman's comment within hours. In response, Mr. Hyman authored a second post asking what had happened: "Howdy, I posted a link to this video on your page earlier: https://www.youtube.com/watch?v=pRbjcOwts However, I can't find it now. Did it get deleted?" The Police Department, acting pursuant to the comment policy, deleted this second comment from view.

40. Screenshots of both of Mr. Hyman's posts are attached here as Exhibit B.

41. Also on April 18, 2018, Natalie Hyman posted a comment to the Police Department's Facebook page. Her comment included a link to the body camera footage. Mrs. Hyman's comment described the link as "The Walnut Ridge Police Department, proudly serving!" The link also had automatically generated the title "Walnut Ridge cop gives hard time to man on the job."

42. Mrs. Hyman posted a reply to her original comment with the sarcastic title "an update to this heartwarming story." Mrs. Hyman's comment reply provided a link to a video that contained a statement from Mayor Snapp concerning the incident involving Finley. Mrs. Hyman's comments are included within Exhibit B.

43. The Police Department, acting pursuant to its comment policy, deleted Mrs. Hyman's comment.

44. The Police Department, acting pursuant to its comment policy, deleted at least dozens of other critical comments as well.

45. The comment policy provides no mechanism for Plaintiffs (or anyone else) to seek relief from anyone outside the Police Department to have their posts restored. Any authority that the City Council could have exercised to control the Facebook page was ceded to Mayor Snapp. The Police Department, acting under Mayor Snapp and pursuant to the comment policy, exercised complete and unreviewed authority over the Facebook page.

46. There is no dispute that the Police Department deleted comments *because* they were critical of the Police Department and its handling of the Finley incident. The City and Chief Kirksey explained the decision to delete the comments as follows:

> The Walnut Ridge Police Department Page received numerous comments that caused a negative view of the city and the police department. This occurred after body camera footage was released from a case, as well as a lawsuit filed against the city and other city employees regarding that case. Chief Kirksey deleted and/or hid numerous posts from many different people at that time.

47. On April 23, 2018, the Police Department temporarily deactivated its Facebook page, admitting that it needed to develop "an acceptable social media policy." The Police Department stated that it "hope[d] to have the page back up in the coming months." The Police Department made this decision without any input from City Council.

48. Before the page was reactivated, Plaintiffs filed this suit in August 6, 2018. The page has not been activated since.

49. Plaintiffs have a continuing interest in the administration of the Police Department and its interactions with the public. They actively monitor and engage in public debate about political and criminal justice issues. Mr. Hyman has run for public office.

50. If and when the Police Department reactivates its Facebook page, Plaintiffs plan to comment on any Department policies or actions that they consider of public interest.

51. The current police chief, Jordan Cooksey, was an officer at the time Plaintiffs' comments were deleted. At that time, he was one of four officers with the ability to remove comments.

## CAUSES OF ACTION

### COUNT I
*Violation of Natalie Hyman's Federal Freedom of Speech Rights by the City of Walnut Ridge*
**(42 U.S.C. § 1983)**

52. Plaintiffs repeat the allegations set forth above as if fully set forth herein.

53. By inviting citizens to express their views on the public Walnut Ridge Police Department Facebook page, the Police Department created a public forum. The creation and moderation of the Facebook page was "state action" subject to the First Amendment.

54. The Police Department, acting pursuant to City policy, deleted Natalie Hyman's comments from the Police Department's Facebook page. The Police Department removed those comments because they expressed viewpoints that the Police Department disagreed with.

55. Defendant violated the Free Speech Clause of the First Amendment by deleting Natalie Hyman's comments because of the viewpoint she expressed.

### COUNT II
*Violation of W. Whitfield Hyman's Federal Freedom of Speech Rights
by the City of Walnut Ridge*
**(42 U.S.C. § 1983)**

56. Plaintiffs repeat the allegations set forth above as if fully set forth herein.

57. By inviting citizens to express their views on the public Walnut Ridge Police Department Facebook page, the Police Department created a public forum. The creation and moderation of the Facebook page was "state action" subject to the First Amendment.

58.     The Police Department, acting pursuant to City policy, deleted W. Whitfield Hyman's comments from the Police Department's Facebook page. The Police Department removed those comments because they expressed viewpoints that the Police Department disagreed with.

59.     Defendant violated the Free Speech Clause of the First Amendment by deleting W. Whitfield Hyman's comments because of the viewpoint he expressed.

## COUNT III
### *Violation of Natalie Hyman's State Freedom of Speech Rights by the City of Walnut Ridge*
### (A.C.A. § 16-123-101, et seq.)

60. Plaintiffs repeat the allegations set forth above as if fully set forth herein.

61. By inviting citizens to express their views on the public Walnut Ridge Police Department Facebook page, the Police Department created a public forum. The creation and moderation of the Facebook page was "state action" subject to the Arkansas Constitution.

62. The Police Department, acting pursuant to City policy, deleted Natalie Hyman's comments from the Police Department's Facebook page. The Police Department removed those comments because they expressed viewpoints that the Police Department disagreed with.

63. The City infringed on Natalie Hyman's rights under the Arkansas Constitution when it deleted her comments because of the viewpoint they expressed. This was a violation of A.C.A. § 16-123-105, which makes it unlawful to for any person acting under color of any statute, ordinance, regulation, custom, or usage of a political subdivision of the State of Arkansas to deprive another person of any rights, privileges, or immunities secured by the Arkansas Constitution.

## COUNT IV
### *Violation of W. Whitfield Hyman's State Freedom of Speech Rights by the City of Walnut Ridge*
### (A.C.A. § 16-123-101, et seq.)

64. Plaintiffs repeat the allegations set forth above as if fully set forth herein.

65. By inviting citizens to express their views on the public Walnut Ridge Police Department Facebook page, the Police Department created a public forum. The creation and moderation of the Facebook page was "state action" subject to the Arkansas Constitution.

66. The Police Department, acting pursuant to City policy, deleted W. Whitfield Hyman's comments from the Police Department's Facebook page. The Police Department removed those comments because they expressed viewpoints that the Police Department disagreed with.

67. The City infringed on W. Whitfield Hyman's rights under the Arkansas Constitution when it deleted his comments because of the viewpoint they expressed. This was a violation of A.C.A. § 16-123-105, which makes it unlawful to for any person acting under color of any statute, ordinance, regulation, custom, or usage of a political subdivision of the State of Arkansas to deprive another person of any rights, privileges, or immunities secured by the Arkansas Constitution. When the City deleted Mr. Hyman's second comment, which challenged the removal of his first comment, it interfered with his rights protected under A.C.A. § 16-123-101, et seq. and violated A.C.A. § 16-123-108.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

68. That a jury be empaneled to decide contested factual issues in this matter.

69. Declaratory judgment that Defendant's administration of their Facebook page and the policies, customs and/or practices governing its use violate the First Amendment of the United States Constitution.

70. Declaratory judgment that Defendant's administration of their Facebook page and the policies, customs and/or practices governing its use violate Article II, Section 6 of the Arkansas Constitution.

71. A permanent injunction restraining Defendant and its officers, agents, servants,

employees, and all persons in concert or participation with them who receive notice of this injunction from deleting Plaintiffs' comments on the Police Department's Facebook page on the basis of the content of the comments;

72. A permanent injunction compelling Defendant and its officers, agents, servants, employees, and all persons in concert or participation with them who receive notice of this injunction, to restore Plaintiffs' deleted posts;

73. Attorney's fees, statutory fees, nominal damages, punitive damages, compensatory damages, and costs pursuant to 42 U.S.C. § 1988 and A.C.A.§ 16-118-107 and 108; and

74. Such other and further relief, including injunctive relief, against Defendant, as may be necessary to effectuate the Court's judgment, or as the Court otherwise deems just and equitable.

Dated:  June 14, 2019

By: /s/Kesha Chiappinelli

Respectfully submitted,
ATTORNEY FOR PLAINTIFFS

Kesha Chiappinelli, #2009175
The Zaffino Law Firm
400 W. Capitol Ave. Suite 1700
Little Rock, AR  72201
(501) 492-3412 Telephone
(501) 897-6500 Facsimile
Kesha@ZaffinoLaw.com

Amy L. Marshak*
Robert D. Friedman*
Institute for Constitutional Advocacy and Protection
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, DC 20001

*Application for admission pro hac vice to be filed

17

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of June, 2019, I electronically filed the foregoing with the clerk of the court for the U.S. District Court, Eastern District of Arkansas, using the electronic case filing system of the Court.

By: /s/ Kesha Chiappinelli